**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**Urbana Division**

| | |
|---|---|
| CRYSTAL ELMORE, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | Case No. 08-2221 |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

# O R D E R

In April 2008, Administrative Law Judge (hereinafter "ALJ") David Thompson denied Plaintiff Crystal Elmore's application for disability insurance benefits and supplemental security income. ALJ Thompson based his decision on a finding that Plaintiff was able to perform her past relevant work.

In September 2008, Plaintiff filed a Complaint for Judicial Review (#3) against Defendant Michael Astrue, the Commissioner of Social Security, seeking judicial review of the ALJ's decision to deny social security benefits. In April 2009, Plaintiff filed a Motion for Summary Judgment or Remand (#13). In June 2009, Defendant filed a Motion for an Order Which Affirms the Commissioner's Decision (#17). In August 2009, Plaintiff filed a Reply to Defendant's Memorandum in Support of Motion for Summary Affirmance (#19). After reviewing the administrative record and the parties' memoranda, this Court **GRANTS** Plaintiff's Motion for Summary Judgment or Remand **(#13)**.

### I. Background
### A. Procedural Background

In November 2004, Plaintiff filed applications for social security benefits alleging disability beginning September 2004. She subsequently amended her alleged onset date to August 1, 2007. The Social Security Administration denied her application initially and on

reconsideration. At Plaintiff's request, the ALJ held a hearing in March 2008. An attorney represented Plaintiff at the hearing. Plaintiff and a vocational expert, Ronald Malik, testified at the hearing. In April 2008, the ALJ issued a decision denying Plaintiff benefits on the basis that she could perform her past relevant work; therefore she was not disabled. In July 2008, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. In September 2008, Plaintiff appealed this decision by filing a complaint in federal court pursuant to 42 U.S.C. § 405(g). Plaintiff seeks a reversal of the ALJ's decision or, in the alternative, remand for reconsideration.

The parties have consented to the exercise of federal jurisdiction by a United States Magistrate Judge.

### B. Factual Background

The ALJ noted that Plaintiff has the "severe combination of impairments" of anxiety and learning disorder. (R. 20.) He observed that Plaintiff had pursued relatively little treatment for her impairments since August 1, 2007, the amended onset date. Dr. Mildred Nelson examined Plaintiff in March 2007 and her review of Plaintiff's systems, based on her evaluation and Plaintiff's report, revealed no abnormal findings. In particular, Plaintiff denied nervousness, depression, anxiety, new stressors, or difficulty concentrating. (R. 288-89, Dr. Nelson's clinic note.) She was taking antidepressant medication which the ALJ observed was apparently working well.

The ALJ determined that Plaintiff has the residual functional capacity (hereinafter "RFC") to perform work at all exertional levels except that she is limited to performing no more than moderately complex or detailed tasks. (R. 23.) The ALJ also noted that Plaintiff was receiving unemployment benefits (in November 2007) and this shows that she has acknowledged that she was capable of working. (R. 24.)

## II.  Standard of Review

In reviewing an ALJ's decision, this Court does not try the case *de novo* or replace the ALJ's finding with the Court's own assessment of the evidence.  *Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir. 1989).  The findings of the Commissioner of Social Security as to any fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Thus, the question before the Court is not whether a plaintiff is, in fact, disabled, but whether the evidence substantially supports the ALJ's findings.  *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995).  The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether a plaintiff is disabled, the Court must affirm the ALJ's decision denying benefits.  *Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996).

The Court gives considerable deference to the ALJ's credibility finding and will not overturn it unless the plaintiff can show that those findings are patently wrong.  *Urban v. Sullivan*, 799 F. Supp. 908, 911 (C.D. Ill. 1992).

## III.  Discussion

Plaintiff argues that the Court should reverse or remand her case because:  (1) the ALJ's RFC determination ignored Plaintiff's bipolar disorder and is not supported by substantial evidence; (2) the ALJ made an erroneous credibility finding; and (3) the ALJ's hypothetical questions to the VE were incomplete resulting in an erroneous Step Four determination.

### A.  The RFC Determination

Plaintiff raises a number of issues related to the ALJ's RFC determination.  Although Plaintiff's brief is a bit confusing, the Court has gleaned the following arguments:  The ALJ ignored Plaintiff's primary impairment of bipolar disorder including her symptoms and mood swings, improperly dismissed Plaintiff's treating doctor's opinion, and impermissibly played

3

doctor by finding that Plaintiff's mental symptoms were adequately controlled by medication. In addition, the ALJ failed to state what he relied on when determining Plaintiff's RFC, in particular, failing to account for his findings of (1) moderate impairments in concentration, persistence, and pace, and (2) borderline intelligence.

It may well be that, based on the evidence in this case, Plaintiff's impairments did not cause any functional limitations. Nevertheless, the decision has several significant errors that require remand and the conclusory nature of some of the ALJ's findings prevents the Court from understanding his reasoning. *See Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996) (stating that the ALJ must sufficiently articulate his evaluation of the evidence so that the reviewing court may follow the ALJ's reasoning and assure itself that the ALJ considered all important evidence).

Plaintiff is correct that the ALJ failed to mention her diagnosis of bipolar disorder. In the absence of any discussion, the Court cannot ascertain whether the ALJ considered this condition nor can it determine the ALJ's reasoning on this issue. On remand, the Court directs the ALJ to consider the evidence related to Plaintiff's bipolar disorder and particularly, to keep in mind when assessing the evidence that bipolar disorder is episodic. *See, e.g., Kangail v. Barnhart*, 454 F.3d 627, 629 (7th Cir. 2006) (stating that it was not contradictory that medical witnesses said the plaintiff's mental illness was severe yet observed that she was behaving pretty normally during her office visits). Consistent with the episodic nature of bipolar disorder, it is particularly important for the ALJ to discuss the evidence that favors Plaintiff's position. *See Godbey v. Apfel,* 238 F.3d 803, 808 (7th Cir. 2001) (stating that an ALJ "must at least minimally discuss a claimant's evidence that contradicts the Commissioner's position").

The Court also agrees that the ALJ did not adequately explain his reasons for failing to give controlling weight to the opinions of Dr. Hayng Sung Yang, Plaintiff's psychiatrist. The ALJ described some of Dr. Yang's opinions and clinic notes and then stated that he did not give

"controlling weight to Dr. Yang's opinion as it is not supported by the treatment record or the opinion of any other examiner." (R. 21.) The ALJ did not refer to any evidence to support this conclusion.

In order for a court to find that the ALJ's ruling is supported by substantial evidence, the ALJ must build an accurate and logical bridge from the evidence to his conclusion. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). Courts will uphold an ALJ's determination not to give controlling weight to the medical opinion of a treating source when that determination is based on a thorough consideration of all relevant medical evidence on the record and where the ALJ identifies and explains the sufficiency of any inconsistent or contradictory medical evidence on which the ALJ relies in rejecting the treating source's opinion. *See Boiles v. Barnhart*, 395 F.3d 421, 426-27 (7th Cir. 2005) (remanding where the ALJ's rejection of the treating physician's opinion "did not explain how other evidence in the record contradicted [the treating source]'s opinion"); *Barnett v. Barnhart*, 381 F.3d 664, 669 (7th Cir. 2004) (remanding where the ALJ explained his reasons for rejecting the treating source's opinion, but that explanation ignored or misconstrued significant parts of the medical record); *Johansen v. Barnhart,* 314 F.3d 283, 287-88 (7th Cir. 2002) (holding that the ALJ's refusal to give controlling weight was proper where the ALJ properly identified inconsistent medical evidence and adequately discussed his reasons for relying on the inconsistent evidence).

Here, the ALJ's conclusion was unsupported by any explanation or reference to the medical record regarding what treatment records or opinions of other examiners did not support Dr. Yang's opinions. On remand, the Court directs the ALJ to explain his reasons for failing to give Dr. Yang's opinion controlling weight, including references to medical evidence that contradicts or is inconsistent with Dr. Yang's opinions with relevant citations to the medical record.

Plaintiff next contends that the ALJ impermissibly played doctor by finding that Plaintiff's mental symptoms were adequately controlled by medication. Specifically, the ALJ stated that Plaintiff's antidepressant medication was "apparently working well." (R. 20.) As to this characterization of the evidence, the Court disagrees with Plaintiff's contention. The clinic note to which the ALJ referred showed that Dr. Nelson's examination revealed no abnormal findings; thus, the ALJ's statement simply reflects the results of the examination. Nevertheless, given the episodic nature of bipolar disorder, on remand, the ALJ should take particular care to address the evidence that favors Plaintiff. *Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) (stating that an ALJ may not simply pick out portions of a medical report that favor denial of benefits, while ignoring those favorable to disability).

Plaintiff next contends that the ALJ failed to account for Plaintiff's moderate difficulties with concentration, persistence, and pace. In addition, she contends that, although the ALJ acknowledged that Plaintiff had a learning disorder, he failed to account for her borderline intelligence. In general, an ALJ cannot "translate" a mental limitation into words describing work such as unskilled, simple, repetitive, routine, one- or two-step, or any similar characterization, because these descriptions may not account for all the limitations a doctor meant to convey. *See Stewart v. Astrue*, 561 F.3d 679, 684-85 (7th Cir. 2009) (rejecting the contention that "the ALJ accounted for Stewart's limitations of concentration, persistence, and pace by restricting the inquiry to simple, routine tasks that do not require constant interaction with coworkers or the general public"); *Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008) (finding that the ALJ's limitation to simple, unskilled work did not adequately address a claimant's undisputed difficulty with concentration). Only if the record shows that a doctor used particular descriptive language to describe what work a claimant can perform in spite of his limitations can the ALJ use that language in the RFC or hypothetical question to the VE. *See Johansen*, 314 F.3d at 289 (concluding that the ALJ's finding that the plaintiff could perform repetitive, low-stress work was proper despite consulting psychologists' conclusion that plaintiff

had "moderate" limitations in three to five abilities listed summarily on mental RFC worksheet, because one consultant "went further and translated those findings into a specific RFC assessment, concluding that Johansen could still perform low-stress, repetitive work").

The ALJ stated in his RFC and hypothetical question that Plaintiff was limited to "performing no more than moderately complex or detailed tasks." (R. 23.) Based on Seventh Circuit case law, this description fails to account for the ALJ's findings that Plaintiff had moderate difficulties with concentration, persistence, and pace and a learning disorder. On remand, the ALJ's RFC and hypothetical question to the VE should account for Plaintiff's limitations regarding concentration, persistence, and pace, rather than a "translation" of those limitations. Regarding Plaintiff's learning disorder, which the ALJ has acknowledged constitutes an impairment (R. 20), the ALJ should explain his reasoning regarding whether Plaintiff's learning disorder and borderline intelligence limit Plaintiff's ability to work, and include any such limits in the RFC and hypothetical question. *See Heron v. Shalala*, 19 F.3d 329, 337 (7th Cir. 1994) (stating that the hypothetical question posed by the ALJ to the vocational expert must fully set forth the claimant's impairments to the extent that they are supported by the medical evidence in the record).

### B. Credibility

Plaintiff also argues that the ALJ's credibility finding is erroneous. Specifically, she states that the ALJ found Plaintiff not credible because (1) she applied to become a foster mother and she has not been found to be an unfit mother; (2) she does well on her medications; (3) she received unemployment benefits; and (4) her "history of marijuana abuse . . . tends to cast a shadow over her credibility." (R. 24.) Plaintiff contends that none of these reasons support the ALJ's credibility finding and several of the ALJ's statements are erroneous.

The Court disagrees with Plaintiff's contention that the ALJ erred by considering her unemployment benefits. In order to submit such an application, a worker must represent that she

is ready, willing, and able to work. *Vreeland v. Astrue*, No. 06-C-466-C, 2007 WL 5414923, *12 (W.D. Wis. Mar. 27, 2007) (unreported). The Seventh Circuit court has stated that it is appropriate for the ALJ to consider any representations a claimant has made to state authorities and prospective employers that he can work. *Knox v. Astrue*, 327 Fed. App'x 652, 656 (7th Cir. 2009); *Schmidt v. Barnhart*, 395 F.3d 737, 746 (7th Cir. 2005) (affirming credibility assessment where decision to apply for unemployment benefits was one of several factors adversely affecting credibility). Therefore, the ALJ did not err when he considered Plaintiff's receipt of unemployment benefits as part of the credibility assessment.

Plaintiff also contends that the ALJ erred by assuming that Plaintiff's desire to be a foster parent and to have another child was "somehow inconsistent with disability." (#15, p. 16.) Plaintiff states that this is antithetical to Seventh Circuit law, which states that child care is not the same as working. The Seventh Circuit court has held that an ALJ may not place "undue weight" on a claimant's daily activities when determining disability. *Mendez v. Barnhart*, 439 F.3d 360, 362-63 (7th Cir. 2006) ("The pressures, the nature of the work, flexibility in the use of time, and other aspects of the working environment as well, often differ dramatically between home and office or factory or other place of paid work."). However, an ALJ may consider a claimant's activities when assessing credibility. *See* 20 C.F.R. § 416.929(c)(3); SSR 96-7p. In light of Plaintiff's statements that she felt overwhelmed by her parental responsibilities, the Court cannot conclude that the ALJ erred by considering this evidence when assessing credibility.

In contrast, the Court is troubled by the ALJ's reference to Plaintiff's marijuana use. The ALJ states that Plaintiff's past use of marijuana undermines her credibility, but he has provided no explanation or reference to medical evidence in the record to support this conclusion. In the absence of any explanation, the Court finds that this is an improper basis for a credibility assessment. The Court agrees with the district court's reasoning in *Johnston v. Barnhart*, in which the court stated as follows:

> The ALJ also seems to have given improper weight to plaintiff's acknowledgment that she smoked marijuana . . . as a basis for discrediting her testimony . . . . As for plaintiff's marijuana use, the ALJ apparently believed that it contributed to plaintiff's depression, and therefore undermined her credibility. However, there is no medical evidence in the record to support that view.

*Johnston v. Barnhart*, 378 F. Supp. 2d 274, 281-82 (W.D.N.Y. 2005); *see Buchholz v. Barnhart*, 56 Fed. App'x 773, 776 (9th Cir. 2003) ("it is unclear how, if at all, Buchholz's medical marijuana use affects his credibility"); *Lawson v. Astrue*, No. 06-4136-RDR, 2007 WL 3026648, *8 (D. Kan. Sept. 27, 2007) ("The relevance of the ALJ's reference to plaintiff's marijuana use is not well-explained. If the ALJ believes that the marijuana use contributes to plaintiff's depression, then he should have referred to some evidence in the record to support that belief. If he believes that people who smoke marijuana do not make credible claims of disability, then he should have said so and supported that position.").

Furthermore, Plaintiff indicates her marijuana use occurred in 2005, two years prior to the amended onset date. If that is the case (the record filed with the Court has been redacted regarding the use of drugs), then the ALJ's reference to Plaintiff's marijuana use is particularly improper because the ALJ did not otherwise consider any medical evidence dated prior to 2007.

The Court recognizes that the ALJ's credibility assessment did not rely solely on Plaintiff's past marijuana use. Nevertheless, because the decision in this case does not indicate why the ALJ considered Plaintiff's past marijuana use or how much weight the ALJ gave to that evidence, on remand, the Court directs the ALJ to explain more clearly the basis for his credibility determination.

### C. The Hypothetical Questions

Plaintiff also argues that the ALJ's hypothetical questions were incomplete, resulting in an erroneous Step Four determination. Because the Court is remanding this case for reconsideration of issues related to Plaintiff's RFC, the Court need not address Plaintiff's remaining arguments at this time.

### IV.  Summary

For the reasons stated above, this Court **GRANTS** Plaintiff's Motion for Summary Judgment or Remand **(#13)** and directs that the case be remanded pursuant to sentence four of 42 U.S.C. § 405(g)[1] for reconsideration consistent with this Order.

ENTER this 15th day of December, 2009.

s/ DAVID G. BERNTHAL
U.S. MAGISTRATE JUDGE

---

[1] Under 42 U.S.C. § 495(g), Sentence Four, "[t]he court shall have power to enter, upon pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a hearing."